UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION

Civil Action No.: 1:24-cv-277

| | |
|---|---|
| E.J. VICTOR, INC. | ) |
| Plaintiff; | ) |
| vs. | ) |
| FIREMAN'S FUND INSURANCE COMPANY | ) |
| Defendant. | ) |

**COMPLAINT FOR BREACH OF CONTRACT,
DECLARATORY JUDGMENT, AND BAD FAITH DENIAL OF COVERAGE**

NOW COMES Plaintiff, E.J. Victor, Inc. ("EJV"), and for its complaint against Defendant, Fireman's Fund Insurance Company ("FFIC"), alleges and avers as follows:

**PRELIMINARY STATEMENT**

1. FFIC is a large liability insurance company that EJV paid a substantial premium in exchange for broad insurance coverage protecting EJV from physical damage and business interruption losses caused by, among other things, catastrophic weather events, including but not limited to hurricanes and other named storms. This action arises from FFIC's wrongful refusal to honor the promises in its insurance policy and pay EJV for a substantial portion of its losses arising from Hurricane Helene, which overwhelmed EJV's furniture manufacturing facility located at 110 Wamsutta Mill Road, Morganton, North Carolina and destroyed much of the building, inventory, furnishings, and fixtures.

## THE PARTIES

2. EJV is a North Carolina corporation having its principal place of business in Morganton, North Carolina.

3. FFIC is a California corporation having its principal place of business in Chicago, Illinois.

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a) because FFIC is not a citizen of the same state as EJV and the amount in controversy exceeds $75,000 exclusive of interest and costs.

5. This Court has personal jurisdiction over FFIC because it does business and is authorized to do business in the State of North Carolina and because it entered into an insurance contract with a citizen of North Carolina.

6. Venue is proper in this Court because a substantial part of the property that is the subject of the action is situated in this district, a substantial part of the events or omissions giving rise to EJV's claim occurred in this district, and FFIC is subject to the Court's personal jurisdiction.

## THE FFIC INSURANCE POLICY

7. FFIC sold to EJV commercial package insurance policy number USC016482240 in effect for the period June 1, 2024 to June 1, 2025 ("Policy"). *See* Ex. 1. FFIC accepted the premium paid by EJV and issued the Policy to EJV as the named insured.

8. The Policy provides coverage for, among other things, "direct physical loss or damage to **Property Insured** while at a **location** . . . caused by or resulting from a **covered cause of loss** during the Policy Period."

9. The Policy defines **Property Insured** to include both EJV's real property and personal property and defines 110 Wamsutta Mill Road, Morganton, North Carolina as one of the covered **locations**. The Policy provides that coverage is extended to loss of business income and extra expense incurred when **Property Insured** is damaged by a **covered cause of loss**.

10. **Covered cause of loss** is defined to mean any "risk[] of direct physical loss or damage not excluded or limited in this Coverage Form [of the Policy]." Accordingly, if the cause of loss is not expressly excluded or limited, it is covered.

11. The Policy has an exclusion applicable, according to its terms, to the defined term **flood**, which provides as follows:

> If fire or explosion is a **covered cause of loss** under this Coverage Form, and fire or explosion results from the causes of loss excluded below, then we will pay for the direct physical loss or damage caused by such fire or explosion up to the Limits of Insurance stated in the Declarations: …
>
> b. Flood
>
> **Flood**. This Flood exclusion does not apply to Transit Coverage.

12. The subject of the exclusion – the bolded term **flood** – is a defined term in the Policy and must be applied in accordance with its definition.

13. The Policy's definition of **flood** provides as follows:

> **Flood** means a general and temporary condition of partial or complete inundation of normally dry land areas from the following, regardless of how caused, whether driven by wind or not:
>
> a. Waves, tides, tidal waves, tsunami, or storm surge;
>
> b. The unusual and rapid accumulation or run-off of surface waters from any source;
>
> c. Mud flow or mudslides caused or precipitated by accumulation of water on or under the ground;

3

  d. The overflow or expansion beyond normal boundaries of inland or tidal waters, including natural or man-made lakes, reservoirs, ponds, brooks, rivers, streams, harbors, seas, oceans, or any other body of water or watercourse; or

  e. Any material, object, or debris that is carried, propelled, or in any manner moved by a flood.

  **Flood** is not any weather condition as referenced in the definitions of **hurricane**, **named storm**, or **storm**.

14. The Policy's definition of **hurricane** provides as follows:

  a. **Hurricane** means a hurricane, typhoon, or tropical cyclone that, as reported or recorded by the National Weather Service:

  (1) Has sustained wind speed of 74 miles per hour or greater; or

  (2) Has been declared to be a hurricane.

  b. **Hurricane** includes loss or damage to the interior of any covered building or structure or to covered property located inside any building or structure which is caused by or resulting from:

  (1) An opening in such building or structure created by the force of a hurricane;

  (2) One or more tornados that are the result of a hurricane;

  (3) Any hail, rain, material, object, or debris that is carried, propelled, or in any manner moved by a hurricane; and

  (4) Any weather condition other than a **hurricane**, if such loss or damage would not have occurred but for the occurrence of a **hurricane**.

15. The Policy's definition of **Named storm** provides as follows:

  a. **Named storm** means a specific storm system, including **hurricane**, that has been named by the National Weather Service.:

  b. **Named storm** includes loss or damage to the interior of any covered building or structure or to covered property located inside any building or structure which is caused by or resulting from:

  (1) An opening in such building or structure created by the force of a named storm;

(2) One or more tornados that are the result of a **named storm**;

(3) Any hail, rain, material, object, or debris that is carried, propelled, or in any manner moved by a named storm; and

(4) Any weather condition other than a **named storm**, if such loss or damage would not have occurred but for the occurrence of a **named storm**.

16. Putting these Policy definitions together, a **flood** within the meaning of the Policy is a "general and temporary condition of partial or complete inundation of normally dry land areas" <u>unless</u> that condition of inundation is a weather condition that falls within the definition of **hurricane** and/or **named storm**. The definitions of **hurricane** and **named storm**, in turn, expressly extend to loss caused by <u>any</u> weather condition that would not have occurred but for the occurrence of the **hurricane/named storm**. Accordingly, if a condition of inundation with water of normally dry land areas (*i.e.*, flooding) would not have occurred but for the occurrence of a **hurricane/named storm**, then that condition is not within the Policy's definition of **flood** and is not excluded from coverage under the Policy.

17. In addition, North Carolina General Statutes § 58-44-60 mandates as follows with respect to commercial property insurance sold to North Carolina policyholders:

> (a) Every insurer that sells residential or commercial property insurance policies that do not provide coverage for the perils of flood, earthquake, mudslide, mudflow, landslide, or windstorm or hail shall, upon the issuance and renewal of each policy, identify to the policyholder which of these perils are not covered under the policy. The insurer shall print the following warning, citing which peril is not covered, in Times New Roman 16-point font or other equivalent font and include it in the policy on a separate page immediately before the declarations page:
>
> "WARNING: THIS PROPERTY INSURANCE POLICY DOES NOT PROTECT YOU AGAINST LOSSES FROM [FLOODS], [EARTHQUAKES], [MUDSLIDES], [MUDFLOWS], [LANDSLIDES], [WINDSTORM OR HAIL]. YOU SHOULD CONTACT YOUR INSURANCE COMPANY OR AGENT TO DISCUSS YOUR OPTIONS FOR OBTAINING COVERAGE

FOR THESE LOSSES. THIS IS NOT A COMPLETE LISTING OF ALL OF THE CAUSES OF LOSSES NOT COVERED UNDER YOUR POLICY. YOU SHOULD READ YOUR ENTIRE POLICY TO UNDERSTAND WHAT IS COVERED AND WHAT IS NOT COVERED."

(b) As used in this section, "insurer" includes an entity that sells property insurance under Articles 21, 45, or 46 of this Chapter.

The Policy contains no such warning.

18. EJV has paid all premiums due to FFIC and has complied with all applicable duties under the Policy. EJV is entitled to the full benefits and protections afforded by the Policy.

### HURRICANE HELENE AND FFIC'S WRONGFUL CONDUCT

19. EJV is the owner of the real property located at 110 Wamsutta Mill Road, Morganton, North Carolina ("Property"). The Property is a covered **location**, as defined in the Policy.

20. The catastrophic storm named Hurricane Helene – a **hurricane** and/or **named storm** within the meaning of the Policy – approached and crossed over western North Carolina, including the Morganton area, on Thursday, September 26 and Friday, September 27, 2024.

21. Hurricane Helene brought the full suite of hurricane impacts to Western North Carolina. News reports indicate that the Charlotte Airport recorded its highest wind gusts in more than five years, a rare mountain tornado formed in Watauga County, numerous weather stations reported their wettest three-day periods on record, and several rivers surpassed their highest-ever crests by several feet. Hurricane Helene caused major property damage throughout the area, and hundreds of thousands were left without electricity for weeks. Ryan Cole, Buncombe County Emergency Services Assistant Director, was quoted as telling the *Citizen-Times* that "we have biblical devastation through the county." *See* https://www.citizen-

6

times.com/story/news/local/2024/09/28/helene-multiple-fatalities-reported-in-buncombe-officials-say/75431520007/.

22. During Hurricane Helene, high winds caused rain and other debris to be carried, propelled, and moved at a rapid velocity toward and into the Property. The Property's roof sustained significant damage, and the interior Property was inundated by water carried into the building, submerging much of the ground floor and severely damaging the walls, furniture, furnishings, and inventory, among other things.

23. On September 30, 2024, EJV provided FFIC notice of the damage to the Property and made its claim for coverage under the Policy.

24. On November 5, 2024, FFIC wrote to EJV to deny coverage for the flood damage portion of EJV's claim. *See* Ex. 2. FFIC's denial advised that FFIC "cannot find coverage for the flood damage portion of the claim" and asserted that coverage is barred by the following exclusion from coverage (which is also quoted above in Paragraph 11):

> If fire or explosion is a **covered cause of loss** under this Coverage Form, and fire or explosion results from the causes of loss excluded below, then we will pay for the direct physical loss or damage caused by such fire or explosion up to the Limits of Insurance stated in the Declarations: …
>
> b. Flood
>
> **Flood**. This Flood exclusion does not apply to Transit Coverage.

25. While FFIC contends that certain of EJV's losses are the result of **flood**, the Policy's definition of **flood** clearly states that "**[f]lood** is not any weather condition as referenced in the definitions of **hurricane**, **named storm**, or **storm**," and the Policy's definitions of **hurricane** and **named storm** clearly state that they include "[a]ny weather condition other than a **hurricane [/named storm]**, if such loss or damage would not have occurred but for the occurrence of a **hurricane [/named storm]**." Inundation by water of normally dry land areas, commonly

7

referred to in vernacular as flooding, falls within the scope of the phrase "any weather condition," and if such weather condition would not have occurred but for a **hurricane [/named storm]**, then it is not within the Policy's definition of **flood** and is not excluded from coverage.

26. The loss and damages sustained by EJV were caused by, and would not have occurred but for the occurrence of, Hurricane Helene. Moreover, the Policy cannot exclude coverage for **flood** without the statutory warning mandated by North Carolina General Statutes Annotated §58-44-60. EJV, therefore, is entitled to coverage.

27. Although the Policy plainly requires FFIC to pay EJV for its losses, FFIC has refused to do so. FFIC's refusal to confirm a clear case of coverage has created significant problems for EJV and has resulted in, and will continue to result in, severe damages. In addition to the crippling losses to EJV's Property, FFIC's delay and denial has left EJV in a position in which it is unable to recommence business operations without a commitment of insurance funds to rebuild or relocate, which should never happen to a business that purchased insurance to cover exactly these circumstances.

28. EJV has complied with all conditions precedent to filing this suit and/or FFIC has waived and is estopped from reliance upon any conditions precedent set forth in the Policy or applicable law.

**COUNT I – DECLARATORY JUDGMENT**

29. EJV repeats and realleges the allegations contained in each of the preceding paragraphs as if fully set forth herein.

30. The Policy is a valid and enforceable contract pursuant to which EJV paid premiums to FFIC in exchange for FFIC's promise to provide coverage. At all times material, the Policy was in full force and effect and all premiums have been paid.

31. EJV has complied with all applicable provisions of the Policy. Any other provisions do not apply or were waived by FFIC or FFIC is estopped from denying compliance therewith.

32. Pursuant to 28 U.S.C. § 2201(a), an actual case or controversy exists between EJV and FFIC concerning whether, and to what extent, insurance coverage is owed under the Policy for water damage sustained to the Property as a result of Hurricane Helene.

33. Pursuant to 28 U.S.C. § 2201(a), EJV seeks a declaratory judgment from this Court establishing that water damage sustained to the Property as a result of Hurricane Helene does not fall within the Policy's definition of **flood** and is not excluded from coverage under the Policy.

## COUNT II – BREACH OF CONTRACT

34. EJV repeats and realleges the allegations contained in each of the preceding paragraphs as if fully set forth herein.

35. In the Policy, FFIC agreed to cover EJV's insured property against all risks of direct physical loss, including but not limited to loss caused by a **hurricane** and/or **named storm**.

36. EJV's insured property suffered direct physical loss as a result of Hurricane Helene.

37. No exclusion in the Policy applies to bar or limit EJV's ability to recover damages and related losses arising out of Hurricane Helene.

38. EJV has complied with all conditions precedent to filing this suit and/or FFIC has waived and is estopped from reliance upon any conditions precedent set forth in the Policy or applicable law.

39. FFIC agreed and was legally and contractually required to promptly and reasonably investigate the loss, provide a reasonable and timely coverage determination, and compensate EJV for all covered damage and losses.

40. Notwithstanding FFIC's promises and legal and contractual obligations, FFIC breached the Policy by refusing to compensate EJV for all covered damage and losses.

41. As a result of FFIC's breach of contract, EJV has been damaged in an amount in excess of SEVENTY-FIVE THOUSAND DOLLARS ($75,000.00) plus interest at the highest amount allowed by law, court costs, and attorneys' fees as allowed by law.

## COUNT III – UNFAIR AND DECEPTIVE ACTS AND PRACTICES

42. EJV repeats and realleges the allegations contained in each of the preceding paragraphs as if fully set forth herein.

43. The acts and omissions of FFIC constitute unfair and deceptive practices proscribed by North Carolina General Statutes §75-1.1 and North Carolina General Statutes § 58-63-15(11) because (a) FFIC failed to provide a reasonable explanation as to how the Policy bars coverage for flood-related damage notwithstanding that the Policy has no warning mandated by North Carolina General Statutes § 58-44-60, in violation of § 58-63-15(11)(n); (b) to the extent the Policy is found to bar coverage for EJV's losses, FFIC misrepresented pertinent facts or insurance policy provisions relating to coverage at issue by selling an insurance policy to EJV without the statutory warning mandated by North Carolina General Statutes § 58-44-60, in violation of § 58-63-15(11)(a); (c) FFIC has not attempted in good faith to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear, in violation of § 58-63-15(11)(f); (d) FFIC acted in bad faith as described in Count IV below, and (e) in such other ways to be proven at trial.

44.     As a direct and proximate result of FFIC's violations of North Carolina General Statutes §§ 58-63-15, *et seq.* and 75-1.1, EJV has suffered damages in an amount in an amount in excess of SEVENTY-FIVE THOUSAND DOLLARS ($75,000.00).

45.     EJV is entitled to an award of its actual damages, with such damages to be trebled pursuant to North Carolina General Statutes § 75-16, pre-judgment and post-judgment interest, attorneys' fees pursuant to North Carolina General Statutes § 75-16.1, and such other and further relief as may be just.

## COUNT IV – BAD FAITH

46.     EJV repeats and realleges the allegations contained in each of the preceding paragraphs as if fully set forth herein.

47.     FFIC's contract with EJV placed a duty upon FFIC to exercise good faith and fair dealing with respect to its insured, which required FFIC to behave in a manner to not impair the right of the insured to receive benefits under the agreement.

48.     Plaintiff breached its duty of good faith and fair dealing by engaging in malicious, willful, oppressive, and aggravated conduct harmful to EJV. In particular, (a) FFIC misrepresented pertinent facts or insurance policy provisions relating to coverage at issue by falsely stating that the Policy unequivocally excludes coverage for flood-related damage when the Policy provisions clearly state otherwise and the Policy has no warning mandated by North Carolina General Statutes § 58-44-60; and (b) FFIC has not attempted in good faith to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear; both in violation of North Carolina General Statutes § 58-63-15(11).

49.     As a result of FFIC's breach of its good faith duty, EJV has suffered injury and is entitled to damages in an amount in excess of SEVENTY-FIVE THOUSAND DOLLARS

($75,000.00) and is entitled to an award of punitive damages pursuant to North Carolina General Statutes § 1D-15 and attorneys' fees from FFIC in accordance with applicable law.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully prays that the Court enter judgment in favor of Plaintiff and against Defendant:

(1) On Count I, declaring that water damage sustained to the Property as a result of Hurricane Helene does not fall within the Policy's definition of **flood** and is not excluded from coverage under the Policy;

(2) On Count II, holding that Defendant breached its insurance contract with Plaintiff and awarding compensatory damages in favor of Plaintiff in an amount sufficient to compensate Plaintiff for all losses sustained as a result of Defendant's breach of contract;

(3) On Count III, holding that Defendant engaged in unfair and deceptive practices proscribed by North Carolina General Statutes §75-1.1 and North Carolina General Statutes § 58-63-15(11) and awarding compensatory damages, with such damages to be trebled pursuant to North Carolina General Statutes § 75-16 and with attorneys' fees pursuant to North Carolina General Statutes § 75-16.1, in favor of Plaintiff to compensate Plaintiff for all losses sustained as a result of Defendant's unfair and deceptive practices;

(4) On Count IV, holding that Defendant engaged in willful, malicious bad faith conduct and awarding compensatory damages to Plaintiff to compensate Plaintiff for all losses sustained as a result of Defendant's and punitive damages pursuant to North Carolina General Statutes § 1D-15;

12

Case 1:24-cv-00277-MR-WCM   Document 1   Filed 11/07/24   Page 12 of 13

(5) Awarding Plaintiff its reasonable attorneys' fees, expenses, and costs incurred in pursuing claims against FFIC in this lawsuit;

(6) Awarding Plaintiff pre-judgment and post-judgment interest at the maximum allowable rates; and

## JURY DEMAND

Plaintiffs hereby demand a trial by jury on all issues so triable.

November 7, 2024                    Respectfully submitted,

By: s/ Cory Hohnbaum
Cory Hohnbaum (NC Bar # 17453)
KING & SPALDING LLP
300 S Tryon Street, Suite 1700
Charlotte, NC 28202
Telephone: (704) 503-2600
Facsimile: (704) 503-2622
Email: chohnbaum@kslaw.com